**No. 26-10441-DD**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

**UNITED STATES OF AMERICA,**
***Plaintiff/Appellee*,**

**v.**

**LAY ONG,**
***Defendant/Appellant*.**

**On Appeal from the United States District Court**
**for the Southern District of Florida**

# INITIAL BRIEF OF APPELLANT LAY ONG

**HECTOR A. DOPICO**
**Federal Public Defender**
**ANSHU BUDHRANI**
**Assistant Federal Public Defender**
**Attorneys for Appellant**
**150 West Flagler Street, Suite 1700**
**Miami, Florida 33130**
**Telephone No. (305) 530-7000**

**THIS CASE IS ENTITLED TO PREFERENCE**
**(CRIMINAL CASE)**

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

**United States of America v. Lay Ong**
**Case No. 26-10441-DD**

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Budhrani, Anshu

D'Angelo, Hon. Ellen F.

Davis, Michael

Dopico, Hector A.

Doty, George E., III

Elfenbein, Hon. Marty Fulgueira

Forand, Peter

Ghomeshi, Sogol

Hernandez, Yeney

Kay, Ashley Devon

Malkin, Ilana

Martinez, Hon. Jose E.

O'Byrne, Hayden P.

Ong, Lay

Reding Quiñones, Jason

Sanchez, Hon. Eduardo I.

Smachetti, Emily

Taney, Marisa

United States of America

*/s/ Anshu Budhrani*
Anshu Budhrani

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Ong was convicted of felony abusive sexual contact based upon conduct that proved, at best, a misdemeanor simple assault. The only element separating the two offenses is the specific intent Congress wrote into the charged offense—an element the government failed to prove, arguing instead that the location of the touching itself supplied it. Allowing this conviction to stand would convert the charged offense into a strict liability crime, contrary to the plain language of 18 U.S.C. § 2246(3) and the structure of the chapter in which Congress placed it.

The appeal also raises a question of first impression regarding what is required before a defendant's witness who cannot be physically present at trial can testify via video conference. In denying Mr. Ong's request to have his sole defense witness testify via live video conference, the court applied Fed. R. Crim. P. 15—the standard that governs the taking of depositions of unavailable witnesses—and left Mr. Ong unable to present any defense at all.

As such, Mr. Ong respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

STATEMENT REGARDING ORAL ARGUMENT ........ i

TABLE OF CITATIONS ........ iv

STATEMENT OF JURISDICTION ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 4

I. Course of Proceedings, Facts, and Disposition Below ........ 4

A. Course of Proceedings and Disposition Below ........ 4

B. Facts ........ 8

II. Standards of Review ........ 11

SUMMARY OF THE ARGUMENT ........ 13

ARGUMENT AND CITATIONS TO AUTHORITY ........ 16

I. Mr. Ong's Conviction Must be Reversed Because the Government Proved Nothing More Than a Touching, and a Touching Alone Does Not Provide Evidence Beyond a Reasonable Doubt of the Specific Intent that 18 U.S.C. § 2246(3) Separately Requires ........ 16

A. Section 2246(3) Requires Proof of Specific Intent Independent of the Touching, and this Court has Already Held that the Specific Intent Element Is What Separates Felony Abusive Sexual Contact from Misdemeanor Assault....................................... 17

B. The Government's Evidence Established a Touching, and Nothing in the Record Supplies the Additional Specific Intent Needed to Satisfy the Elements of the Charged Count........... 22

II. The District Court Erred When it Instructed the Jury on a Lesser-Included Offense Without Informing the Jury of the Missing Element that Differentiated the Lesser-Included Offense from the Charged Offense, Especially When that Missing Element Was the Only Element in Dispute ......................................................... 27

III. The District Court Denied Mr. Ong His Constitutional Right to Present a Defense When It Refused to Allow His Only Witness to Testify by Video About His Reputation As a Law-Abiding Person ........................................................................................ 41

CONCLUSION ......................................................................... 52

CERTIFICATE OF COMPLIANCE...................................................... 53

CERTIFICATE OF SERVICE............................................................ 54

## TABLE OF CITATIONS

### CASES

*Berra v. United States*,

351 U.S. 131 (1956) ........................................................................29

*Cosby v. Jones*,

682 F.2d 1373 (11th Cir. 1982) ........................................................17

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*,

485 U.S. 568 (1988) ........................................................................46

*Jackson v. Virginia*,

443 U.S. 307 (1979) ........................................................................17

*Jennings v. Rodriguez*,

583 U.S. 281 (2018) ........................................................................46

*Keeble v. United States*,

412 U.S. 205 (1973) .................................................. 31, 34, 38, 40, 41

*Michelson v. United States*,

335 U.S. 469 (1948) ...................................................... 43, 44, 49

*Nevada v. Jackson*,

569 U.S. 505 (2013) ........................................................................46

*Sansone v. United States*,

380 U.S. 343 (1965) .......................................................... 29, 30, 36

*Schmuck v. United States*,

489 U.S. 705 (1989) .......................................................... 29, 30, 40

*State v. Powell*,

816 P.2d 86 (Wash. Ct. App. 1991) .................................................. 22

*United States v. Brown*,

505 F.3d 1229 (11th Cir. 2007) .......................................................... 12

*United States v. Chandler*,

996 F.2d 1073 (11th Cir. 1993) .......................................................... 11

*United States v. Demarrias*,

876 F.2d 674 (8th Cir. 1989) ....................................................... 21, 22

*United States v. Drogoul*,

1 F.3d 1546 (11th Cir. 1993) ....................................................... 48, 50

*United States v. Gigante*,

971 F. Supp. 755 (E.D.N.Y. 1997) ...................................................... 45

*United States v. Goldesberry*,

128 F.4th 1183 (10th Cir. 2025) ............................................ 17, 18, 25

*United States v. Hewitt*,

634 F.2d 277 (5th Cir. 1981) .................................................. 43, 44, 51

*United States v. Louis*,

861 F.3d 1330 (11th Cir. 2017) ........................................................ 11

*United States v. Mitrovic*,

890 F.3d 1217 (11th Cir. 2018) ........................................................ 11

*United States v. Nelson*,

574 F.2d 277 (5th Cir. 1978) ......................................................... 37, 41

*United States v. Perez*,

30 F.3d 1407 (11th Cir. 1994) .......................................................... 12

*United States v. Ramos*,

45 F.3d 1519 (11th Cir. 1995) .......................................................... 47

*United States v. Silverman*,

745 F.2d 1386 (11th Cir. 1984) ........................................................ 40

*United States v. Starke*,

62 F.3d 1374 (11th Cir. 1995) ...................................................... 11, 40

*United States v. Tsanas*,

572 F.2d 340 (2d Cir. 1978) ............................................................. 33

*United States v. Turner*,

871 F.2d 1574 (11th Cir. 1989 ........................................................ 40

*United States v. Villegas*,

911 F.2d 623 (11th Cir. 1990) .................................................. 17, 27

*United States v. Williams*,

197 F.3d 1091 (11th Cir. 1999) ...................................... 18, 19, 26, 31

*United States v. Yates*,

438 F.3d 1307 (11th Cir. 2006) (en banc) ......................................... 44

STATUTES

18 U.S.C. § 113(a)(5) ........................................................... 7, 18, 27

18 U.S.C. § 2244(a)(5) ........................................................ 2, 4, 13, 16, 18

18 U.S.C. § 2246 ........................................................................ 19

18 U.S.C. § 2246(2)(A) ................................................................ 20

18 U.S.C. § 2246(2)(B) ................................................................ 20

18 U.S.C. § 2246(2)(C) ................................................................ 20

18 U.S.C. § 2246(2)(D) ................................................................ 20

18 U.S.C. § 2246(3) ........................................................ 2, 13, 16, 18, 20

18 U.S.C. § 3231 ........................................................................ 1

18 U.S.C. § 3742 ........................................................................ 1

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1783(a) .......... 48

**OTHER AUTHORITIES**

1A O'Malley et al., *Federal Jury Practice and Instructions* § 20:05 (6th ed. 2026) .......... 33

207 F.R.D. 89, 96 (2002) .......... 45

2A Wright & Miller, *Federal Practice and Procedure* § 500 (4th ed. 2026) .......... 33

Eleventh Circuit Pattern Jury Instr. (Crim. Cases) § S10.1 (2025) .......... 32

Fed. R. Crim. P. 2 .......... 45

Fed. R. Crim. P. 31(c) .......... 29, 30

Fed. R. Crim. P. 57(b) .......... 45

Fed. R. Evid. 404(a)(2)(A) .......... 43

Fed. R. Evid. 405(a) .......... 43

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, because Mr. Ong was charged with an offense against the laws of the United States. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which confers jurisdiction on the courts of appeals from final decisions and sentences of the district courts. This appeal was timely filed on February 6, 2026 (DE 95) from the final judgment entered on January 29, 2026 (DE 94), disposing of all claims between the parties to this appeal.

## STATEMENT OF THE ISSUES

I. Whether sufficient evidence was adduced at trial to sustain Mr. Ong's conviction under 18 U.S.C. § 2244(a)(5), where the government proved a touching, but offered nothing beyond the touching itself to prove the specific intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire that 18 U.S.C. § 2246(3) separately requires.

II. Whether the district court's lesser-included-offense instruction was erroneous in that it recited the generic elements of the lesser-included offense instead of following this Court's pattern instruction and identifying the intent element that distinguished the lesser offense from the charged offense, in a case where that intent was the sole element in dispute.

III. Whether the district court denied Mr. Ong his constitutional right to present a defense when it refused to permit his only witness—who could not travel to the United States from Malaysia for numerous reasons—to testify by contemporaneous two-way video about his reputation in the community as a law-abiding person, where the rules of evidence and caselaw

supported Mr. Ong's request and, in any event, he also satisfied the standard the court applied.

## STATEMENT OF THE CASE

### I. Course of Proceedings, Facts, and Disposition Below

#### A. Course of Proceedings and Disposition Below

In April 2025, a federal grand jury sitting in the Southern District of Florida returned a one-count indictment against Lay Ong, charging him with knowingly engaging in sexual contact with a minor, in violation of 18 U.S.C. § 2244(a)(5). (DE 14.)

Before trial, the government moved in limine to preclude Mr. Ong from offering general character evidence, among other categories of proof. (DE 42.) The district court granted the motion without prejudice. (DE 51.) Two days later, Mr. Ong moved for reconsideration of the court's order, explaining that counsel had anticipated argument on the issue at calendar call, and preserving Mr. Ong's ability to offer character evidence permissible under Rules 404(a), 404(b), and 608—including evidence of his character as a law-abiding person in his community. (DE 54.) The court denied reconsideration, noting that because the order had issued without prejudice, "Defendant may reassert his objections at trial." (DE 57:2.)

Also before trial, Mr. Ong moved for leave to present the testimony of a witness residing in Malaysia by live video conference. (DE 56.) The

government opposed Mr. Ong's request. (DE 61.) At calendar call on October 16, 2025, counsel identified the witness as Mr. Ong's daughter, Alicia Ong, provided details for why she could not travel to the United States, and proposed the procedures by which her testimony could be received remotely. (DE 104:3–8.) The next day the district court denied the motion without prejudice, applying the three-factor standard governing depositions under Federal Rule of Criminal Procedure 15 and concluding that Mr. Ong had not established the materiality of the testimony or the reliability of the proposed procedures. (DE 65.) The court acknowledged that this Court "has not yet addressed the standard for evaluating defense requests to allow foreign video testimony during trial." (DE 65:1.)

Trial commenced on October 22, 2025, and lasted two days. The government called four witnesses—R.H., his mother, K.F., and Craig Darling—and introduced into evidence surveillance video of the corridor at the time of the alleged incident, R.H.'s birth certificate, a photograph of the ship marked to show the ship's surveillance camera's position, and the cruise line's guest record for Mr. Ong. (DE 105:154, 158, 181, 184.) From opening statement forward, Mr. Ong acknowledged that he had

touched R.H. and contested only whether the government had proven that he acted with the specific intent to abuse, humiliate, harass, degrade, or arouse or gratify a sexual desire that 18 U.S.C. § 2246(3) requires. (DE 105:139–41.)

At the close of the government's case, Mr. Ong moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the evidence was insufficient to establish that he acted with specific intent. (DE 105:190.) The district court denied the motion. (DE 105:191–96.) Mr. Ong then renewed his request to present his daughter's testimony by live video conference. (DE 105:197.) Before even hearing Mr. Ong's reasons for his renewed request, the court stated, "I've ruled on this, and I'm not going to change my mind. I've ruled." (DE 105:197.) Mr. Ong proffered that Alicia would testify to his reputation as a law-abiding person, drawing from her familiarity with his standing in his community and in the work he did and the organizations to which he belonged, and argued that the ruling denied Mr. Ong the opportunity to present a full defense. (DE 105:198–202.) The court responded, "I renew my ruling," and denied the ensuing motion for a mistrial that followed, stating, "Gee, let me think. Denied." (DE 105:201–02.) Mr. Ong did not

testify (DE 105:204), and the defense rested without being able to present a defense case (DE 105:223). Mr. Ong then renewed his motion for a judgment of acquittal, which the court once again denied. (DE 105:225.)

At the charge conference, Mr. Ong requested that the jury be instructed on the lesser-included offense of assault under 18 U.S.C. § 113(a)(5), submitting this Court's pattern instruction, Special Instruction S10.1, with the differentiating element inserted as the pattern directs. (DE 53; DE 105:217–22.) The government filed a memorandum later that evening, proposing to replace the pattern's operative paragraph with a recitation of the generic elements of § 113(a)(5) instead. (DE 70.) The following morning, the district court adopted the government's erroneous formulation of the lesser-included offense instruction that deviated from this Court's pattern instruction. (DE 106:3–6.) Mr. Ong maintained his objection to the instruction given. (DE 106:7–8.)

In his closing argument, Mr. Ong again acknowledged the touching and asked the jury to convict him of assault under § 113(a)(5) instead. (DE 106:17–22.) The government's closing and rebuttal closing

arguments focused on the location of the touching and its effect on R.H to meet its burden as to specific intent. (DE 106:16, 24.)

The jury returned a verdict finding Mr. Ong guilty of the charged offense. (DE 75.) Mr. Ong was sentenced to 41 months' imprisonment followed by five years' of supervised release. (DE 94.) Mr. Ong timely appealed (DE 95) and remains incarcerated.

**B. Facts**

Lay Ong has lived in Malaysia for his entire life. (PSI ¶ 36.) He was born into poverty and grew up in a small fishing village. (PSI ¶ 36.) He was often without electricity growing up and had to quit school and become a fisherman at the age of 13 because his family did not have the money to continue his education. (PSI ¶ 36.) He taught himself the tourism business after his uncle introduced him to the industry and made a career of it. (PSI ¶ 36.) He is a practicing Buddhist and has been married to his wife for approximately 35 years. (PSI ¶¶ 36, 37.) Together, they had two children—Donovan and Alicia—all of whom remain close to and supportive of Mr. Ong. (PSI ¶¶ 37, 38.) Mr. Ong is sixty-eight years old. He has no prior convictions and has never previously been arrested. (PSI ¶¶ 27–32.)

In April 2025, Mr. Ong was a passenger on the cruise ship Icon of the Seas. He was leading a tour group of other Malaysian travelers, showing them all around Florida and the Caribbean. (PSI ¶ 7.) The ship, registered in the Bahamas, sailed from and returned to the Port of Miami. (DE 105:180.)

On the afternoon of April 2, 2025, on board the ship, two boys—R.H., who was seven, and his friend K.F., who was nine—were playing catch with a small football in the corridor immediately outside the cabin R.H. shared with his family. (DE 105:145.) R.H.'s mother was just inside the cabin at the time. (DE 105:164.) The corridor was under video surveillance by the cruise ship's surveillance cameras, and other passengers walked through the corridor while the boys played. (DE 105:183–85.)

The government's evidence at trial established that Mr. Ong came upon the boys as he was walking back to his cabin, which was at the end of that same corridor. (DE 105:189.) R.H. testified that he asked Mr. Ong for a high five. (DE 105:145.) Mr. Ong spoke with the boys briefly. He touched R.H.'s hair and his chin. (DE 105:146.) He asked R.H. whether R.H. was a boy or a girl, and when R.H. answered that he was a

boy, Mr. Ong expressed doubt and said he would make sure. (DE 105:146, 172–73.) He touched R.H.'s genital area through R.H.'s clothing. (DE 105:146–47.) Mr. Ong then continued on his way down the corridor to his own cabin. (DE 105:189.) He did not ask the boys to go anywhere with him, did not attempt to prolong the encounter, and did not ask them to keep anything to themselves. The entire encounter, by K.F.'s account, lasted about two minutes. (DE 105:175.) The ship's surveillance footage shows that the entire interaction lasted about 30 seconds. (Gov't Ex. 1.) The boys did not see Mr. Ong again.

The boys continued playing with the football for a bit before returning to their cabin. They told R.H.'s mom what happened. (DE 105:147, 160–61.) She asked a few questions before reporting the incident to the ship's guest services desk and to its security office. (DE 105:161–63.) That evening, the ship's chief security officer, Craig Darling, reviewed footage from the corridor camera, followed the man on the footage to a stateroom, matched the stateroom to a guest record, and spoke with Mr. Ong. (DE 105:183–84, 187.) Neither boy identified Mr. Ong at trial. R.H. testified that because the encounter had been so short, he did not remember what the man looked like. (DE 105:151.)

Mr. Ong was detained for the remainder of the cruise, and when it returned to Miami, he was met by law enforcement and arrested.

## II. Standards of Review

This Court "review[s] de novo a district court's denial of a motion for acquittal." *United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. 2017) (emphasis omitted).

This Court reviews jury instructions de novo "to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *United States v. Chandler*, 996 F.2d 1073, 1085 (11th Cir. 1993). The question is "whether the jury charge, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995).

This Court reviews constitutional questions de novo and evidentiary rulings for an abuse of discretion. *United States v. Mitrovic*, 890 F.3d 1217, 1220 (11th Cir. 2018). This Court reviews a district court's denial of a motion for a mistrial for an abuse of discretion. *United States v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994). This Court has held that "a district court by definition abuses its discretion when it makes an error

of law" or "applies an incorrect legal standard or follows improper procedures in making the determination." *United States v. Brown*, 505 F.3d 1229, 1267 n.29 (11th Cir. 2007) (alterations and quotation marks omitted).

## SUMMARY OF THE ARGUMENT

Mr. Ong's conviction must be reversed for three reasons. First, the government's evidence was insufficient to establish the elements of the charged offense beyond a reasonable doubt. Second, the district court erroneously instructed the jury on a lesser-included offense without ever identifying the element that distinguished it from the charged offense—the only element in dispute. And third, the district court refused to allow Mr. Ong's sole witness to testify by live video conference, leaving him without a defense.

First, Congress defined the sexual contact that 18 U.S.C. § 2244(a)(5) punishes to require both an intentional touching of an enumerated body part and a specific intent to abuse, humiliate, harass, degrade, or arouse or gratify a sexual desire. 18 U.S.C. § 2246(3). The first requirement asks what a defendant did; the second asks why he did it. The government proved the first and then treated it as proof of the second, telling the jury that Mr. Ong's intent could be read from where his hand went. But an intentional touching of a specific body part does not speak for itself. What the government proved was a touching, which is itself a separate federal crime and one this Court has held included

within the offense charged. What it never proved is the specific intent that separates the two, and on this record no rational juror could have supplied it. Because the government's evidence was insufficient, the Court must vacate Mr. Ong's conviction and remand for entry of a judgment of acquittal.

Second, Mr. Ong asked that the jury be instructed on the lesser-included offense and submitted this Court's pattern instruction, which would have told the jury that proof of the lesser offense required everything necessary to prove the charged offense except the specific intent. The district court instead gave an instruction drafted by the government that recited the three generic elements of simple assault and never identified the intent as what set the two offenses apart. The jury was given every element no one disputed and told nothing about the single element that was the whole of Mr. Ong's defense. The instruction did not perform the function that makes a lesser-included-offense instruction necessary in the first place. As such, this Court should, alternatively, reverse and remand for a new trial.

Finally, Mr. Ong's only witness was his daughter, Alicia, who lives and works in Malaysia and could not travel to the United States for trial.

He asked that she be permitted to testify as to his reputation as a law-abiding person by live video conference, in open court, under oath, and subject to cross-examination. No rule of criminal procedure governs such a request by a defendant, and where the rules are silent, they direct courts toward flexibility rather than refusal—especially where the consequence of refusal is a defendant who cannot mount a defense. The district court instead measured the request by the standard that governs depositions of unavailable witnesses, and denied it. As such, this Court should reverse and remand for a new trial.

## ARGUMENT AND CITATIONS TO AUTHORITY

### I. MR. ONG'S CONVICTION MUST BE REVERSED BECAUSE THE GOVERNMENT PROVED NOTHING MORE THAN A TOUCHING, AND A TOUCHING ALONE DOES NOT PROVIDE EVIDENCE BEYOND A REASONABLE DOUBT OF THE SPECIFIC INTENT THAT 18 U.S.C. § 2246(3) SEPARATELY REQUIRES

Section 2244(a)(5) makes it a federal crime to knowingly engage in sexual contact with a child who has not attained the age of twelve years in the special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 2244(a)(5). Congress defined "sexual contact" to require *both* an intentional touching of an enumerated body part *and* a specific intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. 18 U.S.C. § 2246(3). The first requirement asks what a defendant did. The second asks why he did it. Here, the government proved the first and then treated it as proof of the second, telling the jury that Mr. Ong's intent could be read from where his hand went. But an intentional touching of a specific body part does not speak for itself. What the government proved was a touching, which is itself a separate federal crime, and one this Court has held included within the offense charged. What it never proved is the specific intent that

separates the two, and on this record, no rational juror could have supplied it.

### A. Section 2246(3) Requires Proof of Specific Intent Independent of the Touching, and this Court has Already Held that the Specific Intent Element Is What Separates Felony Abusive Sexual Contact from Misdemeanor Assault

The Due Process Clause forbids convictions "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Because even a properly instructed jury "may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt," *id.* at 317, courts must not abdicate their judicial role in deference to a verdict. *See United States v. Goldesberry*, 128 F.4th 1183, 1192 (10th Cir. 2025). This Court has held that where the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982). Suspicion, however strong, is not proof beyond a reasonable doubt. *See United States v. Villegas*, 911 F.2d 623, 628 (11th Cir. 1990).

Section 2244(a)(5) punishes one who "knowingly engages in or causes sexual contact with or by another person" who has not attained

the age of twelve. 18 U.S.C. § 2244(a)(5). Sexual contact, in turn, means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). The definition imposes two distinct mental states. The touching must be intentional, which distinguishes a deliberate contact from an accident or a brush in a crowded corridor. And that intentional touching must be accompanied by a specific intent—to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire—which distinguishes the charged offense from every other reason a person might deliberately touch another person's body. Proof of the first says nothing about the second. As the Tenth Circuit expressed in vacating a conviction under a companion provision of this chapter, "the government cannot prove *mens rea* simply by repeatedly proving *actus reus*." *Goldesberry*, 128 F.4th at 1200.

That the specific-intent requirement carries independent weight is not only evident from the statute's structure; this Court has held it. In *United States v. Williams*, 197 F.3d 1091 (11th Cir. 1999), the Court held that simple assault under 18 U.S.C. § 113(a)(5) is a lesser-included

offense of abusive sexual contact. *Id.* at 1096. Every element of the misdemeanor assault under § 113 is contained within the felony, which, in turn, includes one more element—the specific intent sent out in § 2246(3). *Id.* A jury could find, on the same facts, that a defendant committed "the slightest willful offensive touching" without harboring the specific intent the greater offense requires. *Id.* The two offenses are distinct because the greater requires a touching done with specific intent. Read as the government read it below, however, every willful offensive touching of any of the six enumerated body parts would satisfy both statutes at once, and *Williams* would have decided a question that could not arise.[1] No such touching could ever warrant the lesser instruction, and *Williams* could not have been decided as it was.

Importantly, with regard to 18 U.S.C. § 2246, which provides the pertinent definitions for the offenses contained in Chapter 109A, Congress included a separate specific-intent element into some definitions and omitted it from others, and what separates the two groups

[1] In *Williams*, the government's evidence at trial proved that the defendant touched a ten-year-old girl on her chest, buttocks, and vaginal area, and the inside of her leg. 197 F.3d at 1092. The defendant there also admitted to asking her for a kiss. *Id.* The location of his touching was of the body parts enumerated in the "sexual contact" definition.

is the nature of the act, not the part of the body it involves. A sexual act under § 2246(2)(A) and (2)(B)—contact between the penis and the vulva or anus, and contact between the mouth and the genitals or anus—requires no separate proof of specific intent. *See* 18 U.S.C. § 2246(2)(A); 18 U.S.C. § 2246(2)(B). Those subsections contain no separate intent element that must be proven before those actions can be deemed sexual acts because the acts they describe admit of no other purpose other than a sexual one.

Every other definition in the statute, however, requires the government to prove the why behind the alleged action. Section 2246(2)(C), which reaches "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object," requires proof of the identical specific intent at issue here. *See* 18 U.S.C. § 2246(2)(C). The same is true of § 2246(2)(D), which reaches "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years," as well as § 2246(3), which is the subsection at issue here. *See* 18 U.S.C. § 2246(2)(D); 18 U.S.C. § 2246(3).

Subsection (2)(D) is particularly detrimental to the government's argument here because it describes direct, skin-to-skin contact with the genitals of a child, and yet, Congress still requires proof of the why—that is, specific intent that the touching was done for an enumerated list of reasons before such contact can be deemed a "sexual act." The location of the touching—a child's genitals not through clothing—does not speak for itself with regard to intent. And if direct contact with a child's genitals does not establish its own purpose, contact through a pair of shorts surely cannot.

The Eighth Circuit wrangled with the varying offenses encompassed in Chapter 109A in *United States v. Demarrias*, 876 F.2d 674 (8th Cir. 1989). Addressing whether abusive sexual contact is a lesser included offense of aggravated sexual abuse, the court explained that "[c]ha[p]ter 109A encompasses some types of contact which by their nature are sexual acts, and therefore require no showing of intent," while "[o]ther types of contact, especially with the hand or an object, may be made for purposes other than sex." *Demarrias*, 876 F.2d at 676. The line the court drew is the same line the statute draws. Some acts are sexual by their very nature; others are not, whatever part of the body they

involve. A physician administering medication to a genital area, for example, does not act with any of the intent the statute enumerates, and "[a] distinction must therefore be made for contact that falls into this category. That distinction is the requirement that the actor's intent be to gratify, harass, abuse, or degrade." *Id.* The location of a touching alone cannot itself supply evidence of intent. The statute forecloses such an inference. A separate showing of specific intent is required precisely because contact of this kind does not disclose the reason for it. *See also State v. Powell*, 816 P.2d 86, 88 (Wash. Ct. App. 1991) (noting that where evidence shows touching through clothing, "the courts have required some additional evidence of sexual gratification").

### B. The Government's Evidence Established a Touching, and Nothing in the Record Supplies the Additional Specific Intent Needed to Satisfy the Elements of the Charged Count

Measured against what § 2246(3) requires, the government's proof establishes the act but offers nothing that answers why. The government's entire case rests on the testimony of four witnesses. The testimony adduced at trial was that R.H., seven-years-old at the time of the alleged incident, was playing catch with his friend K.F. in the corridor right outside his family's cabin aboard the cruise ship Icon of the Seas.

(DE 105:145.) R.H.'s mom was in the cabin at the time the boys were playing just outside of the door. A man neither boy had seen before—and whom neither boy identified at trial—walked down the corridor toward his own cabin at the end of the corridor. (DE 105:189.) That man was stopped by the boys, spoke to them, asked R.H. whether he was a boy or a girl, and, when R.H. said that he was a boy, expressed doubt and said he would make sure. (DE 105:146, 172–73.) The man touched R.H.'s genital-area through R.H.'s clothing. (DE 105:146–47.) The man then walked away, continuing on his way down the corridor towards his own cabin. (DE 105:189.) R.H.'s mother did not witness the interaction because she was inside the cabin at the time. (DE 105:164.) Craig Darling, the ship's chief security officer, testified to the vessel's registry, its itinerary, and his review of the surveillance footage. (DE 105:180–87.) He was not there when the alleged incident occurred so he did not witness anything. The entire encounter, according to K.F., lasted about two minutes. (DE 105:175.) The surveillance footage of the incident shows that it lasted about 30 seconds. (Gov't Ex. 1.)

The government built its entire case on the touching, and more specifically, its location. It argued that Mr. Ong's specific intent followed

from the location of the touching; that where he touched R.H. supplied his specific intent. Its closing argument put the proposition plainly: "You know from where the defendant touches, not the arm, not even th[e] chin, grabbing genitals, squeezing R[.H.]'s penis and testicles . . . . That's not a high five." (DE 106:16.) Its rebuttal closing argument focused the jury on the surveillance video alone, which recorded the touching: "Take a look at this video carefully . . . . Two-and-a-half minutes of intent . . . . This video is intent." (DE 106:24.) It told the jury it could find Mr. Ong's specific intent "because it happened, because it had the intended effect." (DE 106:24.) That is not an argument from evidence of specific intent at all. It is an argument that the act itself and its consequences establish the state of mind, which is the very definition of a strict liability offense and specifically what the law disallows.

Nothing in the circumstances of this encounter supplies the specific intent the government failed to prove. The entire encounter lasted about two minutes, and the touching itself was momentary. It occurred in a passenger corridor of a cruise ship where other passengers had walked by, under video surveillance, with another child standing close enough to see over R.H.'s shoulder. The boys did not know Mr. Ong and had never

seen him before. Neither Mr. Ong nor R.H. was disrobed. Nothing was said or done afterward: no threat, no instruction to keep a secret, no attempt to prolong the encounter, no effort to move R.H. anywhere, and no further contact of any kind. Mr. Ong continued on his way, towards his own cabin, without so much as a glance back. The government embraced these deficits, noting: Mr. Ong "doesn't have to have been stalking these boys around the cruise . . . . His intent is formed in a moment," (DE 106:15), once again embracing the dearth of evidence and wholly relying on the physical act alone. Problematically, however, though intent may indeed form in a moment, it must still be proven, and the government here proved only the physical act.

The gap this leaves is not one that inference can bridge. Where the evidence supports a culpable explanation and an innocent one with equal force, a reasonable jury must entertain a reasonable doubt. *Cosby*, 682 F.2d at 1383. Here the evidence does not even present that choice, because it addresses only what Mr. Ong did and not why he did it. "The evidence of what happened . . . supports *actus reus*, not *mens rea*." *Goldesberry*, 128 F.4th at 1198. A jury asked to find specific intent on this record had nothing to reason from except the location of the touching

and the child's distress, and neither is evidence of what Mr. Ong meant to accomplish.

The government's answer below was that no other explanation for the touching existed—that there could be no reason to grab a seven-year-old stranger in his genital area "if not to abuse him, if not to humiliate him or harass him or degrade him or to gratify a sexual desire." (DE 106:16–17.) The premise of that argument, however, is that the universe of explanations is a binary—either an innocent reason or a sexual purpose such that eliminating the first establishes the second. Congress rejected that binary when it created a third category of offense and placed it in the same title: an offensive touching, willful and unwanted and deserving of punishment, committed without the specific intent § 2246(3) requires. That offense is found in 18 U.S.C. § 113(a)(5), and this Court has held it included within the offense charged here. *Williams*, 197 F.3d at 1095–96. Once that third category is acknowledged, the absence of an innocent explanation proves nothing at all about which of the two remaining offenses Mr. Ong committed, and the government's argument identifies the wrong one.

Mr. Ong's conduct was wrong, but it was not the federal crime the government charged. As this Court has recognized, even in the most severe cases, "the presumption of innocence remains constant, irrespective of the heinous nature of condemned activity, as does the requirement that the government prove its case beyond a reasonable doubt, notwithstanding the presence of mere suspicion and speculation." *Villegas*, 911 F.2d at 630. Because no rational trier of fact could find beyond a reasonable doubt that Mr. Ong touched R.H. with the specific intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person, his conviction under § 2244(a)(5) must be vacated.

## II. THE DISTRICT COURT ERRED WHEN IT INSTRUCTED THE JURY ON A LESSER-INCLUDED OFFENSE WITHOUT INFORMING THE JURY OF THE MISSING ELEMENT THAT DIFFERENTIATED THE LESSER-INCLUDED OFFENSE FROM THE CHARGED OFFENSE, ESPECIALLY WHEN THAT MISSING ELEMENT WAS THE ONLY ELEMENT IN DISPUTE

Relying on binding caselaw from this Court, Mr. Ong asked that the jury be instructed on the lesser-included offense of simple assault under 18 U.S.C. § 113(a)(5) and provided the court with the pattern jury instruction for lesser-included offenses. The pattern instruction would have informed the jury that proof of the lesser-included offense required

proof beyond a reasonable doubt of the facts necessary to prove the charged offense in Count 1 "except the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." (DE 105:221.) That is, it made explicit which element of the charged offense was lacking from the lesser-included offense.

The district court gave a lesser-included instruction—drafted by the government—that deviated from the pattern by enumerating the three elements of a generic § 113(a)(5) offense and failing to specify the distinguishing factor—that the lesser-included offense lacked the specific intent element of the charged offense. That is, the jury was provided with all the overlapping elements that Mr. Ong was not disputing but was not instructed on the one missing element that distinguished the lesser-included offense from the charged offense—which was the crux of Mr. Ong's entire defense—as the pattern instruction requires. As such, the instruction given did not perform the function that makes a lesser-included offense instruction necessary in the first place. It was erroneous, and therefore, the conviction must be reversed and the case remanded for a new trial.

Federal Rule of Criminal Procedure 31(c) permits a jury to find a defendant guilty of "an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c). "In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifie[s] it," is entitled to "an instruction which would permit a finding of guilt of the lesser offense." *Berra v. United States*, 351 U.S. 131, 134 (1956). The elements of the lesser-included offense must be a subset of the elements of the charged offense, with the comparison being as between the elements of the offenses in question "and not . . . by reference to conduct proved at trial." *Schmuck v. United States*, 489 U.S. 705, 716–17 (1989). "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States*, 380 U.S. 343, 350 (1965). The differentiating element is not incidental to the instruction but is instead the entire justification for giving a lesser-included offense instruction.

Notably, a lesser-included offense instruction is not simply an instruction on a second crime. Where an offense is separately charged,

the jury decides it independently, and an instruction setting out that offense's elements supplies the law. A lesser-included offense is not before the jury independently, but is instead before it only because it is "necessarily included in the offense charged," Fed. R. Crim. P. 31(c); its elements are ones the grand jury has already returned, *Schmuck*, 489 U.S. at 717–18; and its availability turns on a dispute about the element that separates it from the charged offense, *Sansone*, 380 U.S. at 350. An instruction that only recites a lesser-included offense's generic elements without reference to the excluded elements of the charged offense, therefore, fails to properly convey the law that governs lesser-included offenses, because it omits the relationship that places the offense before the jury in the first place.

Provision of a lesser-included offense instruction militates against the risk that a jury will fail to give full effect to the reasonable-doubt standard. *See Schmuck*, 489 U.S. at 717 n.9. This is so because "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble v. United States*, 412 U.S. 205, 212–

13 (1973). The instruction thus protects a defendant from an improper conviction by supplying jurors with a third option.

The importance of providing jurors with a proper lesser-included offense instruction is exemplified in *Keeble*. There, the charged offense was assault with intent to commit serious bodily injury; the lesser was simple assault; and the distinguishing element was intent. The defendant requested that the jury be given the lesser-included offense instruction, was denied, and found guilty of the charged offense. *Id.* at 206–07. In finding error, the Supreme Court reasoned that because "the nature of [the defendant's] intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented." *Id.* at 213. But, instead, the jury was presented with only two options, and the Court could not say "that the availability of a third option . . . could not have resulted in a different verdict." *Id.*

This Court has already considered the exact charged offense and lesser-included offense at issue here. In *Williams*, the Court held that simple assault under § 113(a)(5) is a lesser-included offense of abusive sexual contact. *Id.* at 1095–96. In so holding, the Court reasoned that every element of simple assault is contained within the charged offense

of abusive sexual contact, save for the specific-intent element, which is only an element of abusive sexual contact. *Williams* unequivocally answered the question of whether it was appropriate to give a lesser-included offense instruction here—it was—and also highlighted the one differentiating element between the two offenses—intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

Applying *Williams*'s holding and reasoning, Mr. Ong asked the court to provide the jury with this Court's lesser-included offense pattern instruction. Special Instruction S10.1 provides that, "[p]roof of the lesser included offense requires proof beyond a reasonable doubt of the facts necessary to prove the crime charged in Count number ___, except______ [list elements not required for the lesser-included offense]." Eleventh Circuit Pattern Jury Instr. (Crim. Cases) § S10.1 (2025). The instruction is crafted to specifically identify for the jury the one element whose absence produces a verdict of guilt as to the lesser-included offense only. It conveys to the jury the very reason for giving an additional instruction on an uncharged—but lesser-included—offense. "If the jury has a choice of offenses of which they may find defendant guilty, defendant is entitled,

on request, to instructions making clear the difference between the offenses." 2A Wright & Miller, *Federal Practice and Procedure* § 500 (4th ed. 2026). Other circuits accomplish the same goal with an express sentence to the same effect. *See, e.g.*, 1A O'Malley et al., *Federal Jury Practice and Instructions* § 20:05 (6th ed. 2026) (noting the Fifth Circuit's pattern instruction for a lesser included offense: "The difference between these two crimes is that to convict the defendant of _____ *(the lesser crime)*, the government does not have to prove _______ *(describe missing element of greater crime . . . )*. This is an element of the greater crime, but not the lesser crime.). Shared amongst the majority of circuits' pattern instructions is inclusion of a sentence explicitly listing the differentiating element between the charged offense and the lesser-included offense.

Additionally, where a defendant timely requests that a lesser-included offense instruction be given and provides a proposed instruction, "the court should give the form of instruction which the defendant seasonably elects," because "[i]t is his liberty that is at stake" after all. *United States v. Tsanas*, 572 F.2d 340, 346 (2d Cir. 1978). And doing so protects the operation of the reasonable doubt standard: absent it, jurors

who doubt the greater offense but believe the defendant guilty of something are "likely to resolve [their] doubts in favor of conviction" of the greater offense." *Keeble*, 412 U.S. at 213.

Here, Mr. Ong submitted pattern instruction S10.1, completed to fit the charges he faced:

**S10.1**
**Lesser-Included Offense (Single)**

In some cases, a defendant is charged with breaking a law that actually covers two separate crimes.

A "lesser-included offense" is a crime that isn't as serious as the other crime a defendant is charged with.

If you find the Defendant not guilty of the crime charged in Count number 1, you must determine whether the Defendant is guilty of the lesser-included offense.

Proof of the lesser-included offense requires proof beyond a reasonable doubt of the facts necessary to prove the crime charged in Count number 1, except the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

(DE 53; DE 105:221.) But the court gave the jury the lesser-included offense instruction submitted by the government, which, per the government, was "a modified version of the pattern jury instruction (DE 70:1):

In some cases, a defendant is charged with breaking a law that actually covers two separate crimes.

A "lesser-included offense" is a crime that isn't as serious as the other crime a defendant is charged with.

If you find the Defendant not guilty of the crime charged in Count number 1, you must determine whether the Defendant is guilty of the lesser-included offense, assault on an individual who has not yet attained the age of 16 years under 18 U.S.C. § 113(a)(5).

Proof of the lesser included offense requires all the following facts are proved beyond a reasonable doubt:

First: in the special maritime and territorial jurisdiction of the United States, which includes any foreign vessel during a voyage having a scheduled departure from and/or arrival in the United States with respect to an offense committed by or against a national of the United States;

Second: the Defendant engaged in the willful offensive touching of an individual, regardless of the intent to do harm; and

Third: the individual had not attained the age of 16 years.

(DE 73:13.)

The court's instruction included the first three paragraphs of the pattern instruction, but modified the fourth paragraph to include only the generic elements of simple assault without noting what differentiated the lesser-included offense from the charged offense. The charge directed

the jury's attention to three matters no one disputed, while erasing any reference to the contested specific intent element—the element whose disputed status made a lesser-included offense instruction proper in the first place, *Sansone*, 380 U.S. at 350, and the element this Court identified in *Williams* as the sole differentiator between the two offenses.

The result was a complete distortion of the purpose of a lesser-included offense instruction. The charge did not merely omit the differentiating element; it affirmatively conveyed that the two offenses were independent of one another. Having been instructed that Mr. Ong was "charged with breaking a law that actually covers two separate crimes," and that a lesser-included offense "isn't as serious as the other crime a defendant is charged with," (DE 73:13), the jury was then handed two sets of elements to compare. One described the intentional touching of "the genitalia, anus, groin, breast, inner thigh, or buttocks" with an intent to abuse, humiliate, harass, degrade, or gratify sexual desire. The other described a willful offensive touching. Nothing in the charge connected them. A jury comparing those descriptions had every reason to conclude that the first accounted for what happened in the ship's corridor while the second described some other, less serious category of

contact. That comparison is precisely backwards. Under *Williams*, the touching in this case is a willful offensive touching; the lesser offense reaches this conduct fully. The instruction's phrasing, however, suggested the lesser-included offense was reserved for lesser conduct, when, as a matter of law, it covers the same conduct without the required specific intent of the charged offense.

An instruction like the one given here that describes the elements of the charged offense and a lesser-included offense without explicitly asserting what differentiates the two deprives the defendant of the benefit of a lesser-included instruction, even where the instructions given are a technically-accurate recitation of each offense's elements. *See United States v. Nelson*, 574 F.2d 277, 282 (5th Cir. 1978) (holding that instructions that "failed to distinguish between the two separate degrees of offense" were erroneous and "deprived [the defendant] of the benefit of jury consideration of the lesser included offense"). A lesser-included offense instruction that never identifies the differentiating element cannot do the work that entitles a defendant to it in the first place, and Mr. Ong was functionally in the same position as a defendant who

received no instruction at all—with a jury that had no way to act on a doubt about the only element in dispute.

Here, whether Mr. Ong acted with specific intent was contested throughout trial—from opening statements through closing arguments. He conceded the touching in his opening statement and again in his closing argument, but asked the jury to convict him of the lesser-included offense of assault because the government failed to provide any evidence—let alone evidence beyond a reasonable doubt—that he touched R.H. with an intent to abuse, humiliate, harass, degrade, or gratify sexual desire. (DE 105:139; DE 106:17–20.) His case was, in short, the very case *Keeble* described: a jury that had been told by both sides that the defendant committed an offense, with a single element of the charged offense in dispute. 412 U.S. at 213. It is the paradigmatic circumstance in which a lesser-included offense instruction serves its most vital function, and yet had its purpose stymied by the court's failure to identify the differentiating element between the two offenses. The risk *Keeble* identified operated at full strength: jurors who believed Mr. Ong had done something wrong, but were unsure what he intended by it, were

given a verdict form with a second box and no instruction connecting that box to their doubt.

Here, not only did Mr. Ong timely request that a lesser-included offense be given, but he provided the court with this Court's pattern instruction verbatim. It was a correct statement of the law[2] and correctly identified for the jury the contested intent element whose absence produced the lesser verdict. The court's lesser-included offense instruction completely omitted the one sentence that explained why the lesser-included offense instruction was being given. No other instruction supplied what was missing. The jury was never explicitly instructed that if it had doubts as to Mr. Ong's intent, it could find him guilty of the lesser-included offense, because that is what distinguished the lesser from the charged offense. As such, the charge, considered as a whole, did not sufficiently instruct the jury "so that the jurors understood the issues

[2] The government below erroneously asserted that Mr. Ong's proposed instruction misstated § 113(a)(5) by carrying over the under-twelve and enumerated-body-part elements of the abusive sexual contact offense. But a jury finding every fact required for a conviction under Count 1 except for specific intent has necessarily found jurisdiction, a willful offensive touching, and a victim under the age of sixteen—all of the elements of a § 113(a)(5) offense—because a seven-year-old is under the age of sixteen and a touching of the genitals is an offensive touching.

and were not misled." *Starke*, 62 F.3d at 1380. The relationship between a charged offense and an offense necessarily included within it is a question of law, already resolved for the offenses at issue here by this Court in *Williams*. A charge that conveys that relationship inaccurately presents an issue of law and is reversible error. *See United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir. 1989) (recognizing that reversal is required where "the issues of law were presented inaccurately"); *United States v. Silverman*, 745 F.2d 1386, 1395–96 (11th Cir. 1984) ("The charge must define the offense charged and its elements to enable the jury to apply the law of the case to the facts.").

The court's error here was also not harmless. A lesser-included offense instruction only exists because it became clear that a jury that believes the defendant committed some offense, while doubting a single element of the one charged, "is likely to resolve its doubts in favor of conviction," and the instruction is what "protects the defendant from such improper conviction." *Keeble*, 412 U.S. at 213; *Schmuck*, 489 U.S. at 717 n.9. The instruction Mr. Ong received never identified the element about which this jury could have harbored that doubt. It therefore left this jury precisely where the absence of any lesser-included offense instruction

would have left it—facing the all-or-nothing choice the doctrine exists to prevent. It was an improper, incomplete lesser-included offense instruction. Where instructions leave "no way of knowing for which offense a properly instructed jury would have found an appellant guilty, a new trial is required as a prophylactic for improper jury instructions." *Nelson*, 574 F.2d at 282. What the Supreme Court said of the record in *Keeble* is true of the record here: this Court "cannot say that the availability of a third option . . . could not have resulted in a different verdict." 412 U.S. at 213. Mr. Ong's conviction must be vacated and the case remanded for a new trial.

## III. THE DISTRICT COURT DENIED MR. ONG HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE WHEN IT REFUSED TO ALLOW HIS ONLY WITNESS TO TESTIFY BY VIDEO ABOUT HIS REPUTATION AS A LAW-ABIDING PERSON

Mr. Ong intended on calling one witness in his defense—his daughter, Alicia Ong.[3] She would have testified to his reputation in his community as a law-abiding person. Because Alicia lives and works in Malaysia—and could not obtain leave from her job that required her onsite presence; could not afford the cost of travel on her monthly income;

[3] Mr. Ong disclosed her as a potential defense witness in his Exhibit and Witness List, filed on September 11, 2025. (DE 41.)

did not have a visa to travel to the United States and no certainty on obtaining one in time due to the government shutdown; and could not have been compelled to appear by a subpoena issued by the court—Mr. Ong requested that she be permitted to testify via live video-conference, in open court, under oath, and subject to cross-examination. (DE 56; DE 104:3–8.) The court denied his request, and, as a result, Mr. Ong was unable to present a defense. (DE 65; DE 105:197, 201.)

Testimony that a defendant has a reputation in the community as a law-abiding person is generally admissible, and here, was the only evidence Mr. Ong intended on offering in his defense. It also went to the heart of his defense and spoke to the intent issue in dispute throughout his trial. No rule of criminal procedure governs how such testimony is to be received from a defense witness who cannot be physically present at trial, and where the rules are silent, they direct courts toward flexibility rather than refusal. That direction has its greatest force where the alternative is a defendant who is precluded from mounting a defense. The court's refusal to permit Alicia to testify via live video was error, and as a result, Mr. Ong's conviction must be vacated and his case remanded for a new trial.

Federal Rule of Evidence 404(a)(2)(A) permits a defendant to offer evidence of a pertinent trait of his character, while Rule 405(a) provides that such a trait "may be proved by testimony about the person's reputation." Fed. R. Evid. 404(a)(2)(A); Fed. R. Evid. 405(a). A defendant "may always introduce evidence of pertinent traits of his character." *United States v. Hewitt*, 634 F.2d 277, 278–79 (5th Cir. 1981) (internal quotation marks omitted). These rules regarding character evidence exist precisely because character bears directly on the questions a jury must answer. As the Supreme Court explained in *Michelson v. United States*, 335 U.S. 469 (1948), this line of inquiry "is opened to the defendant because character is relevant in resolving probabilities of guilt." *Id.* at 476. A defendant "may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged." *Id.* "[S]uch testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt." *Id.*

In *Michelson*, the Supreme Court affirmed that a defendant charged with bribery was entitled to establish his character as a "law-abiding citizen" even though the trait was "broader than the crime

charged." 335 U.S. at 483. This Court's predecessor applied that holding in *Hewitt*, where evidence establishing a defendant's "character as law-abiding citizen" was held to be "always relevant . . . and may be introduced whether or not the defendant takes the stand." 634 F.2d at 279. Because the defendant in *Hewitt* was denied "the opportunity to present evidence of his general character as a law-abiding citizen," his conviction was reversed and the case remanded for a new trial. *Id.* at 278, 280.

Here, Mr. Ong proffered the testimony of his daughter, Alicia, as evidence of his general character as a law-abiding citizen (DE 104:6; DE 105:197), which, per *Hewitt*, is "always relevant." *Id.* at 279. But no rule or case from this Court directly answers how such testimony should be presented where the witness is unable to testify in court. This Court has previously considered the propriety of contemporaneous two-way video testimony for a government witness over a defendant's Confrontation Clause objection, in *United States v. Yates*, 438 F.3d 1307, 1313 (11th Cir. 2006) (en banc). But no decision of this Court has yet addressed a defendant's request to present his own unavailable witness in the same manner, which would not implicate the Confrontation Clause's concerns.

Though the rules and caselaw do not supply a definitive answer, they do strongly hint at one. The Federal Rules of Criminal Procedure "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2. And where no controlling provision applies, a judge "may regulate practice in any manner consistent with federal law, [the] rules, and local rules." Fed. R. Crim. P. 57(b). Together the rules direct a court confronting an unanticipated request to fashion a solution that promotes justice, fairness, and a defendant's rights. "American criminal procedure . . . is pragmatic. It recognizes that [the preference for in-court testimony] can not be made available in every instance if there is to be an effective search for the truth in an atmosphere protecting the defendant's needs for fairness and due process." *United States v. Gigante*, 971 F. Supp. 755, 756–57 (E.D.N.Y. 1997) (relying on Rules 2 and 57(b) to permit contemporaneous testimony by closed-circuit transmission); *see also* 207 F.R.D. 89, 96 (2002) (Breyer, J., dissenting from the decision not to transmit proposed Fed. R. Crim. P. 26(b)) (pointing out that "where the

defendant seeks the witness' video testimony to help secure exoneration, the [Confrontation] Clause simply does not apply").

Flexibility is most warranted where, as here, the consequence of rigidity is that a defendant is precluded from presenting a defense at all. A criminal defendant is entitled to a meaningful opportunity to present a complete defense. *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) ("The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (alterations and quotations omitted). A reading of the rules under which an unavailable witness's testimony is simply lost to a defendant who has no other witness does not inconvenience him; it forecloses his constitutional right to present a defense. Courts should not reach for such a harsh result when another is available. *Cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (construing the doctrine of constitutional avoidance and noting that it "reflects the prudential concern that constitutional issues not be needlessly confronted); *Jennings v. Rodriguez*, 583 U.S. 281, 296–97 (2018) (noting that in the face of constitutional questions, courts must adopt an alternative construction so long as it is "plausible," "fairly possible," or "reasonable").

Here, Rule 2 required that the rules be interpreted to provide a just result, and Rule 57(b) left the district court free to craft such a result. Alicia should have been permitted to testify via videoconference.

The district court instead applied the standard governing the taking of depositions in Federal Rule of Criminal Procedure 15, drawing from the three-factor test this Court applied in *United States v. Ramos*, 45 F.3d 1519, 1522–23 (11th Cir. 1995): whether (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the movant's case will be absent, and (3) countervailing factors render the procedure unjust to the opposing party. *Id.* Though it remains an open question whether this is the standard that even applies to a defendant's request to permit his sole witness to testify via videoconference, Mr. Ong satisfies each of the three factors.

Alicia was unavailable to testify as trial. She is the sole interior designer assigned to a project that required her onsite presence in Malaysia from August through December 2025—the period encompassing trial—and could not take leave without forfeiting the entire job. (DE 104:3.) Her monthly income was less than the price of airfare to Miami. (DE 104:4.) She is a Malaysian citizen who held no

United States visa. (DE 104:4.) And she was beyond the subpoena power of any United States court, which reaches only nationals and residents of the United States who are abroad. *See* 28 U.S.C. § 1783(a). Each obstacle was independent of the others, and any one of them established her unavailability for purposes of Rule 15. *See United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993) ("A potential witness is unavailable for purposes of Rule 15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at trial," and such a "showing need not be conclusive"). The district court did not find otherwise; it acknowledged that these facts "may be sufficient to establish unavailability." (DE 65:3.)

Alicia's testimony was also material to Mr. Ong's defense. The district court erroneously reasoned that Alicia's testimony was not material because she "was not on the vessel where the alleged offense took place," and because testimony about Mr. Ong's "tendency to abide by the law" did not demonstrate how it was "exculpatory and not merely corroborative or cumulative or other available evidence." (DE 65:3.) But character witnesses are not usually present at the scene of an alleged offense. Reputation testimony is admissible precisely because it does not

depend on the witness's account of the charged conduct; it speaks instead to "the shadow [the defendant's] daily life has cast in his neighborhood," *Michelson*, 335 U.S. at 477, and permits the jury to infer "that he would not be likely to commit the offense charged," *id.* at 476. Presence at the scene is no measure of materiality for evidence of this kind, and to require it would exclude reputation testimony from every criminal trial. Nor could this testimony have been cumulative, because there was nothing for it to duplicate. It bore directly on the contested issue at trial. The encounter at issue lasted about 30 seconds and there was no dispute that Mr. Ong was a stranger to the boys and walked away almost immediately. What it had to prove—and what Mr. Ong disputed from opening statement through closing argument—was that he touched R.H. with an intent to abuse, humiliate, harass, degrade, or arouse or gratify a sexual desire. On the record here, that intent could at best only be inferred, and evidence bearing on the probability that this man would commit such an offense went straight to the heart of that inference.

Finally, no countervailing factor made the procedure unjust to the government. The district court identified five matters it said Mr. Ong had not addressed: the location from which the witness would testify, the

stability of her internet connection, camera provisions that would reflect her demeanor, measures to ensure she was not coached, and measures to ensure she did not improperly consult documents. (DE 65:4.) But as Mr. Ong noted, Alicia "has access to a computer and can be in a room in isolation with no one else present." (DE 104:6.) There would be "two cameras, one showing the room, one having the witness seen so that everybody is able to see her," such that "[t]he jury would be able to see her demeanor." (DE 104:6–7.) Mr. Ong also proposed that Alicia could "use the camera to show nobody else is there," and offered that "if the Court wanted in the absence of the jury to ask questions of Ms. Ong or the Government to ensure that she is in a private room, no one else is there, that could certainly be done as well." (DE 104:7–8.) Mr. Ong further represented that Alicia would testify under oath and be subject to cross-examination, and directed the court to similar procedures it had approved in an earlier case. (DE 104:6–7.) Whatever concerns remained were of the sort this Court has described as "largely premature and speculative," and "best addressed if and when" the testimony is offered. *Drogoul*, 1 F.3d at 1556. The solution cannot be outright refusal of the request.

The cost of the district court's denial of Mr. Ong's request to have Alicia testify to his character in the community is not a matter of speculation. Mr. Ong was unable to present a defense. The jury was asked to decide whether he acted with the intent the charged offense requires without being able to hear anything on Mr. Ong's behalf. In this case, the district court's evidentiary ruling did not just narrow Mr. Ong's defense, it eviscerated it completely.

Because of the district court's erroneous denial of Mr. Ong's request to have his daughter testify via videoconference, reversal for a new trial is required. In *Hewitt*, the defendant had already presented the testimony of several eyewitnesses; the character evidence he sought would have supplemented an already-robust defense case. 634 F.2d at 278. But even there, the court, after acknowledging the admonition that appellate courts should disturb rulings on character evidence "rarely and only on clear showing of prejudicial abuse of discretion," held that the trial court's refusal "to permit the introduction of any character evidence by the defendant makes this such an occasion." *Id.* at 280. The trial court's refusal here is even more problematic because it completely precluded Mr. Ong from putting on any defense whatsoever. As such,

reversal for a new trial is required. *Id.* (reversing and remanding for a new trial in light of the court's error in refusing to permit the introduction of character evidence by the defendant).

## CONCLUSION

For the foregoing reasons, Mr. Ong respectfully requests that this Court reverse his conviction and remand for entry of a judgment of acquittal. Alternatively, the Court should reverse and remand for a new trial.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*/s/ Anshu Budhrani*
ANSHU BUDHRANI
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 9,912 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

*/s/ Anshu Budhrani*
Anshu Budhrani

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 17th day of August 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via CM/ECF on Emily Smachetti, Assistant United States Attorney, and George E. Doty, III, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Anshu Budhrani*
Anshu Budhrani